UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SERGIO PRINCE,

    *Plaintiff*,

v.

HATATU ELUM, *et al.*,

    *Defendants*.
_____/

Case No. 12-15526

DISTRICT JUDGE TERRANCE G. BERG
MAGISTRATE JUDGE CHARLES E. BINDER

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS ELUM & GARDON HOWELL'S MOTION FOR SUMMARY JUDGMENT
(Doc. 9)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED**.

**II.    REPORT**

    **A.    Introduction**

On December 17, 2012, Plaintiff, a state prisoner currently housed at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983. Claims against seventeen defendants were dismissed and the defendants terminated from the case on January 14, 2013, and March 6, 2013. The remaining claims are Counts I and II of the Complaint, which are lodged against Defendants Hatatu Elum (a librarian) and Beth Gardon Howell (a registered nurse): (1) "Civil conspiracy, deprivation, retaliation, and violations" of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a) ("Rehabilitation Act" or "RA") by both Defendants; and (2) "Retaliation by Defendant

Elum." (Doc. 1 at 15-41.)

The case was referred to the undersigned magistrate judge for pretrial case management on February 15, 2013. (Doc. 7.) On March 28, 2013, Defendants Elum and Gardon Howell ("Defendants") filed the instant Motion for Summary Judgment. (Doc. 9.) Plaintiff responded to the motion on April 17, 2013. (Doc. 13.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation without oral argument.

### B.     The Complaint

Count I of the complaint avers that Plaintiff's entitlement to participate in the National Library Services' ("NLS") talking book machine and books on cassette tapes programs was verified on January 20, 2005, while Plaintiff was housed at the Ryan Correctional Facility. Plaintiff states that he kept the talking book machine and cassette tapes when transferred several times in 2008 and 2009. (Doc. 1 at 16.) On September 25, 2009, Plaintiff filed grievance # JCF-2009-2145-14F against Defendant Elum "for denying to photocopy 81 pages from the 60 AM JUR 2d Penal and Correctional Institutional legal book despite his willingness to pay." (*Id*. at 16-17.) Defendant Elum has proffered evidence (the copy log) to show that Plaintiff did not make any request for copies on September 25, 2009, as alleged. (Doc. 10 (filed under seal).)

Approximately two and one-half months later, on December 9, 2009, Plaintiff's application for continued use of the talking book machine and books on cassette tapes that he submitted to Defendant Elum was denied by Defendant Gardon Howell as "not medically necessary." (Doc. 1 at 17.) On December 17, 2009, Plaintiff's talking book machine and cassette tapes were seized by an officer (Duncan) who indicated his instructions to seize the materials came from Defendant Elum. (*Id.*) On December 18, 2009, Plaintiff informed Defendant Elum that he had a 2005 letter from an authority at the Wayne County Regional Library for the Blind and Physically handicapped

2

to verify his certificate of eligibility for the program, but he alleges that she replied, "I am the librarian and you do not qualify to be in the program" and, when he asked how someone qualifies, she responded that one has to be blind to qualify. (*Id.*)

On December 21, 2009, Plaintiff filed grievance # JCF-2009-12-2935-17B, alleging retaliation on the part of Defendant Elum for his having filed grievance # JCF-2009-09-2145 against her. (Doc. 1 at 18.) On January 14, 2010, the Step I response to grievance # JCF-2009-09-2145 from ADW Ken Ryan and Reviewer Deputy Warden Joe Barrett stated, "It is not the intent that prisoners be re-evaluated for the program each time they arrive at a new facility. Based upon the Grievant's prior approval to participant [sic] in the program, it is recommended that the prisoner be allowed to remain in the program." (Doc. 1 at 19.) Although Plaintiff informed Defendant Elum of the response, he alleges that she insisted that she would not allow Plaintiff to participate in the program until she received a notice or e-mail directly from Ryan or Barrett. (*Id.*) Plaintiff continued to file more grievances and exhaust his remedies. On March 10, 2010, the Step III response to grievance # JCF-2009-09-2145 indicated that Plaintiff had been placed back in the program as of January 22, 2010, and staff indicated that the tape player arrived on March 4 and was given to Plaintiff on March 5, 2010. (Doc. 1 at 20-21.) Plaintiff acknowledges that he received the talking book machine and books on cassette on March 5, 2010. (*Id*. at 26.)

Count II against Defendant Elum alleges that on August 25, 2010, Plaintiff "submitted a MDOC Legal Photocopy Disbursement Authorization ('LPDA') to Defendant Elum." (*Id*. at 27.) Defendant Elum allegedly told Plaintiff that she could not copy the requested information out of "Stedman's Medical Dictionary, Laboratory Reference Range Values (9 pages) on account of the copyright laws." (*Id*.) On August 26, 2010, Plaintiff filed grievance # JCF-2010-08-2043-14F against Defendant Elum. (*Id*. at 27-29.) Plaintiff also alleges that on October 12, 2010, Defendant

3

Elum indicated that eight pages was "too many" pages to be copied. (*Id.* at 30.) Plaintiff adds that on October 8 and 13, 2010, he requested that two and five pages, respectively, be copied out of the Merck Manual of Medical Information and Defendant Elum approved the requests. (*Id.* at 30-31.)

Plaintiff continued to exhaust his administrative remedies and file grievances. On December 20, 2010, however, Plaintiff received the requested photocopies. (*Id.* at 35.) On January 10, 2011, an untimely response to Plaintiff's grievance indicated that "[a]fter review of the Copyright Law it has been determined that providing the Grievant with copies of 9 pages of the Stedman's Medical Dictionary does not violate the Copyright Law as the Grievant is requesting the copies to educated [sic] the courts on what he has deemed improper medical treatment . . . [and therefore] . . . Grievant has been issued the requested copies." (*Id.* at 30.)

On June 17, 2011, Plaintiff again requested copies from Stedman's Medical Dictionary and Defendant Elum denied the request based on copyright laws and the excessive number of pages, even though Plaintiff only requested that nine pages be copied. (*Id.* at 35-36.) Plaintiff filed grievance # JCF-2011-06-1205-14F, alleging that Defendant Elum's actions were unconstitutional retaliation for his filing grievance # JCF-2009-09-2145-14F. (*Id.* at 36.) On July 14, 2011, the requested copies were provided to Plaintiff. (*Id.* at 37.) Plaintiff continued to exhaust his remedies but was ultimately informed that the copies were provided to him and that his grievance did not give sufficient "evidence or information on how the librarian has harassed him," so the grievance was denied. (*Id.* at 38-39.)

### C. Defendants' Arguments

Defendants assert that: (1) neither the ADA nor the RA impose liability upon individuals; (2) Defendants did not take any adverse action against Plaintiff that was motivated, at least in part, by his protected conduct; (3) there is no evidence of a civil conspiracy between Defendants Elum

4

and Gardon Howell; and (4) Defendants are entitled to qualified immunity because their conduct did not violate clearly established constitutional rights that a reasonable person would have known. (Doc. 9 at 3.)

### D.     Motion Standards[1]

When deciding a motion to dismiss, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

### E.     Analysis and Conclusions

### 1.     Civil Conspiracy

---

[1] Although Defendants' motion is one for summary judgment, the arguments surrounding these two claims are that Plaintiff has failed to state a claim upon which relief can be granted; therefore, the motion to dismiss standards are more applicable. (Doc. 9 at 9-10, 12-13.)

Section 1985 prohibits a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). To prevail on a § 1985(3) claim, one must prove "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2001) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)). Moreover, the Supreme Court has stated that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971); *accord Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Courts recognize that "conspiracies are by their very nature secretive operations" such that they may need to be proven by circumstantial rather than direct evidence. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). However, this does not relieve plaintiffs of their burden to present more than mere conclusory allegations. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987) (vague and conclusory allegations of conspiracy unsupported by material facts are insufficient under § 1983).

In the instant case, the complaint is completely devoid of any allegations, let alone supporting facts, tending to show an agreement between Defendants. In addition, Plaintiff has not alleged that it was his membership in any class that caused any alleged animus behind the Defendants' action. I suggest therefore that Plaintiff's conclusory allegations are insufficient to

6

state a claim upon which relief can be granted.

    **2.    ADA and RA**

Plaintiff brings claims under the ADA and the Rehabilitation Act, i.e., Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a). The Sixth Circuit has noted that "[b]ecause the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County, Tenn.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000). "[T]o establish a prima facie case of discrimination under the ADA" in the prison setting, "a plaintiff must prove that '(1) [he] has a disability; (2) [h]e is otherwise qualified; and (3) [he] is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability.'" *Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008) (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005)).

In addition, to assert a claim under the ADA, the plaintiff must have been excluded from the activities of a "public entity." A "public entity" is defined as "(A) any State or local government; and (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ."). 42 U.S.C. § 12131. Therefore, individuals are not liable for damages for an alleged violation of the ADA. *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not [ ] provide for suit against a public official in his individual capacity"); *Powell v. Morris*, 184 F.R.D. 591, 596 (S.D. Ohio 1998) ("[t]here is no individual liability under the ADA").

Accordingly, I suggest that Plaintiff cannot state a claim under the ADA and RA against individual Defendants Elum and Gardon Howell and I therefore suggest that Defendants' motion

for summary judgment be granted as to these claims.

### 3.     Retaliation

Plaintiff alleges several claims of retaliation in violation of the First Amendment to the U.S. Constitution.

#### a.     Qualified Immunity Defense

Defendants raise the defense of qualified immunity, which "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; courts are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565

8

(2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (citations omitted).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

### b. Whether a Constitutional Violation Occurred

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011).

As to the first element, the First Amendment protects a prisoner's filing of non-frivolous grievances. *Hill v. Lippin*, 630 F.3d 468, 472 (6th Cir. 2010). "In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but 'only to the extent that the underlying claims ha[ve] merit.'" *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). The grievance need not be formal to be protected; the salient question is whether the grievance, in whatever form, is frivolous. *Clark,* 413 F. App'x at 812 ("The problem with Clark's case is not that his complaint was informally made, but that it has not been shown to have had any merit.").

In the instant case, Plaintiff avers that Defendants retaliated against him for filing previous successful grievances by refusing to provide nine pages of requested copies on June 17, 2011, from Stedman's Medical Dictionary, claiming that to do so would violate copyright laws. (Doc. 1 at 35-36.) Plaintiff received the copies requested approximately one month later and he received the talking book machine and cassettes 78 days later. (Doc. 1 at 26, 37.) Plaintiff does not allege any consequences based on this delay, e.g., he has not alleged that he was denied access to the courts based on this delay. For purposes of this motion, I will assume, *arguendo*, that these grievances were adequate to satisfy the first element of a retaliation claim.

As to the second element, however, I suggest that Plaintiff has not alleged sufficient adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct. The alleged adverse action is that Defendant Elum continued to deny copies based on her insistence that copying the requested medical source material would violate the copyright laws, when, Plaintiff suggests, she should have known better based on the results of his previously filed grievances. In addition, Plaintiff avers he was denied use of the talking book machine and tapes for 78 days.

10

I suggest that this adversity, denials of requested copies without any allegation that the copies were needed to support or defend any court actions, is not sufficiently adverse to deter persons from filing non-frivolous grievances. There is no constitutional or other "right to photocopies in whatever amount a prisoner requests." *Courtemanchie v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003); *accord Bell Bey v. Toombs*, No. 93-2405, 1994 WL 105900, at *2 (6th Cir. March 28, 1994). I further suggest that Plaintiff's being denied his talking book machine and cassette tapes for 78 days is insufficiently adverse to support this element of a retaliation claim. *See Brown v. Prelesnik*, No. 1:12-cv-873, 2013 WL 838289, at *13 (W.D. Mich. Mar. 6, 2013) (since there is no constitutional right to keep books on cassette tape or other recreational materials in a cell, confiscation of books on cassette tapes does not state a § 1983 claim). I therefore suggest that Plaintiff has not satisfied the second element and that Defendants are entitled to qualified immunity on this ground alone.

Even if Plaintiff were able to satisfy the second element, I suggest that Plaintiff has not come forward with any evidence to withstand Defendant's properly supported motion as to the third element, i.e., a causal connection that any adverse action was motivated at least in part by the plaintiff's protected conduct. In the instant case, Defendant Elum has proffered a sworn affidavit wherein she indicates that "[a]t no time did I retaliate against anyone for filing grievances on me." (Doc. 9, Ex. 1 at 2-3.) Defendant Elum states that she was concerned the request for copies would violate the copyright laws because the books were subject to copyright protection as seen on the pages attached to her affidavit. (*Id.* at 3-4, 10-11.) With regard to the retaliation alleged under Count I – that Defendant Elum denied Plaintiff his book reader and cassette tapes for 78 days – Defendant Elum attests that she "did not believe that the Plaintiff met the necessary qualifications to participate" because Plaintiff "always used standard printed materials without any magnifier and

11

requested copies to be reduced to fit 2 pages on 1 which is a smaller print than standard." (Doc. 9, Ex. 2 at 3.) To the extent that Plaintiff has averred a retaliation claim against Defendant Gardon Howell, I would further suggest that her affidavit provides unchallenged evidence that she lacked any retaliatory motive. (Doc. 9 at Ex. 2.)

Defendants have proffered reasonable, non-retaliatory motives and Plaintiff has failed to come forward with evidence to contest those explanations. I therefore suggest that Plaintiff cannot show a constitutional violation occurred and that Defendants' motion for summary judgment should be granted as to the retaliation claims. *See Lane v. Valone*, No. 05-CV-73273-DT, 2009 WL 649842, at *3 (E.D. Mich. March 11, 2009) (qualified immunity applied where defendant contended he was denied copying privileges based on prison policy to suspend privilege pending resolution of grievance).

### c. Whether a Reasonable Person Would Have Known

Even assuming, *arguendo*, that Plaintiff could show a constitutional violation, I suggest that any such violation would not have involved a clearly established constitutional right of which a reasonable person would have known. *See Radvansky,* 395 F.3d at 302. I therefore suggest that Defendants are entitled to qualified immunity and that the motion for summary judgment should be granted.

### F.  Conclusion

For the reasons stated above, I recommend that Defendants' motion for summary judgment be granted.

## III.  REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after

being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this report and recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

        s/ Charles E. Binder
        CHARLES E. BINDER
Dated: May 7, 2013        United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: Sergio Prince #225620, G. Robert Cotton Correctional Facility, 3500 N. Elm Road, Jackson, MI 49201.

Date: May 7, 2013        By    s/Patricia T. Morris
        Law Clerk to Magistrate Judge Binder